D I F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

**06-CR-352 (NGG)**

-against-

VOLKAN MERGEN,

                      Defendant.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Currently before the court are two motions in limine pertaining to the prosecution of Defendant Volkan Mergen ("Defendant" or "Mergen"). The Government seeks to introduce certain statements Defendant made during his plea allocution and to preclude Defendant from asserting the affirmative defenses of public authority and duress at trial. (Gov't Motion (Docket Entry #30).) Defendant seeks to preclude the plea allocution statements and to present the affirmative defenses to the jury. (Def. Motion (Docket Entry #34).)

For the reasons set forth below, both the Government's motion and Defendant's motion are GRANTED in part and DENIED in part.

**I.    BACKGROUND**

The following facts are drawn from the parties' motion papers. Around 2000, Defendant began acting as a paid informant for the FBI, providing information about organized crime activity in the New York City area. In 2002, his status changed from informant to cooperator. Over the years, he received monthly payments of as much as $3,500 from the FBI for his services. His cooperation primarily consisted of providing information about the criminal activities of others and engaging in certain activities with the knowledge of the FBI, such as

1

making loanshark payments or controlled drug buys. The charges in the present Indictment stem from crimes allegedly committed by Defendant while he was cooperating with the FBI.

In 2005, Defendant began associating with a Staten Island-based crew of the Bonanno crime family and providing information about them to the FBI. During that year, Defendant made about 275 consensual recordings for the FBI, taping evidence of numerous crimes committed by the members of this crew. During that time, Defendant was authorized to engage in specific types of otherwise illegal activity, such as purchasing drugs.

On the night of January 24, 2006, Defendant informed his FBI handler that the crew was planning to firebomb a house in Staten Island later that night, but that he would try to dissuade them. Much later in the evening, Defendant told the agents that he had taken members of the crew to a strip club and had convinced them not to commit the arson that night. On January 26, Defendant met with his handling agents, who gave him a recording device and told him to find out the status of the plan to commit the arson. At 9:02 P.M. that night, one of the crew members said, "Let's go to my house, pick up the gas cans in my garage [and] go take care of this kid." The arson took place about six hours later, around 3:05 A.M. Immediately thereafter, Defendant contacted his handler and informed him that they had committed the arson.

Subsequently, Assistant U.S. Attorney Joey Lipton ("AUSA Lipton") approached Defendant about entering a guilty plea relating to the arson. According to Defendant, AUSA Lipton assured him that if he entered the plea, he would continue to receive his monthly stipend and that the Government would file a motion with the court at sentencing under Section 5K1.1 of the Federal Sentencing Guidelines.[1] On the other hand, if he refused to enter the plea, the arson might be referred to the Staten Island District Attorney, where Defendant could face a sentence

---

[1] "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines" in imposing a sentence. U.S.S.G. § 5K1.1.

of up to 25 years in prison based on his past criminal record. On June 5, 2006, Defendant signed a cooperation agreement in which he agreed to enter a guilty plea in exchange for certain promises by the Government, such as its promise to make a 5K1 motion at sentencing if it determined that he had cooperated fully.

That same day, Defendant waived indictment and pled guilty before then-Magistrate Judge Kiyo Matsumoto pursuant to the cooperation agreement. The one-count information charged him with interstate travel in aid of racketeering: namely, traveling from New York to New Jersey and back on January 27, 2006 in furtherance of a plan to set fire to a residence in Staten Island. During the plea allocution, Defendant gave the following testimony under oath: "On January 27, 2006, I traveled with others by car from Staten Island to New Jersey to obtain gasoline to be used to set fire to a house. In New Jersey, we obtained gasoline and then traveled by car to Staten Island. In Staten Island, we drove to a house and one of the individuals set fire to the house using the gasoline. At the time of these events, I was cooperating with the government but I did not have authorization to set fire to a house or to obtain gasoline for that purpose." (Transcript of Guilty Plea 25 (Docket Entry #4).)

That might have been the end of the matter, had it not been for an alleged false statement Defendant made several months later during a debriefing session. At the session, Defendant told AUSA Lipton that he had no knowledge of three fake watches (valued at $75) that were allegedly stolen. Defendant then stepped outside and spoke with an agent who refreshed his memory. His recollection refreshed, he relayed what he knew about the watches to AUSA Lipton. Because of this incident, the Government wanted Defendant to plead guilty to the additional charge of making a false statement to a federal official. When negotiations on this issue proved unsuccessful, the Government decided instead to proceed to sentence on the arson

to which Defendant had already entered a plea.[2] It informed him, however, that it would not make a 5K1 motion on his behalf in connection with the arson plea.

Subsequently, Defendant moved to withdraw his guilty plea, which had not yet been accepted by this court. On August 5, 2008, the court granted the motion without objection from the Government. (Docket Entry #9.) Following Defendant's withdrawal of his plea, the Government stopped paying him his monthly stipend and filed a superseding Indictment.

The Indictment charges Defendant with six counts of criminal conduct. Count One is identical to the charge from the aborted guilty plea relating to the arson: interstate travel in aid of racketeering. Counts Two and Three charge Defendant with robbery conspiracy and attempted robbery "in connection with the August 2002 attempted gun-point robbery of the owner of a check cashing business operating out of a vehicle at a gas station in Staten Island." (Gov't Motion 3.) Count Four charges Defendant with carrying a firearm in relation to this robbery conspiracy and attempted robbery. Counts Five and Six charge Defendant with conspiracy to distribute and distribution of cocaine and marijuana in 2003 and 2004.

## II. DISCUSSION

### A. Plea Allocution Statements

The Government seeks to introduce the statements Defendant made during his plea allocution, quoted above, as part of its case-in-chief. (Gov't Motion 13 n.4.) Though statements made in connection with a withdrawn or aborted plea would normally be inadmissible under Federal Rule of Evidence 410, the cooperation agreement under which Defendant entered his guilty plea specified that he would waive his rights to object to the use of such evidence in any prosecutions resulting from a breach of the agreement. Specifically, the Defendant waived "all

---

[2] The Government has not pursued the false statement charge against Defendant.

claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, that statements made by him on or after January 26, 2005, or any leads derived therefrom, should be suppressed." (Reply (Docket Entry #37) Ex. 1, Cooperation Agreement ¶ 9.) At trial, the Government proposes to introduce the plea allocution statements as sworn statements by Defendant, but to omit any information about their context, such as the fact that they were made during a plea that was later withdrawn.

In response, Defendant asserts that withdrawing the plea rendered the agreement a nullity. (Def. Motion 10.) He points out that the whole agreement was premised upon the assumption that Defendant would plead guilty. "Since the record indicates that there is no plea, there is no agreement." (Id.) Because there is no agreement, he argues, there is no waiver regarding the plea allocution statements.

Defendant's argument boils down to the assertion that he had the right to unilaterally terminate the agreement at any time by withdrawing his guilty plea. Not only does this reading of the agreement make no sense, it finds no support in the language of the agreement. "Cooperation agreements, like plea bargains, are interpreted according to principles of contract law." United States v. Rexach, 896 F.2d 710, 713 (2d Cir. 1990). The agreement contains promises by Defendant and by the Government. Nothing in the agreement makes the contract conditional, in force only if Defendant first pleads guilty. Rather, Defendant specifically promised to "waive indictment and plead guilty" to a one-count information. (Cooperation Agreement ¶ 1.) By withdrawing the plea, Defendant broke his promise and breached the contract. Under the terms of the agreement, this breach entitles the Government to certain

5

remedies, such as tolling of the statute of limitations[3] and waiver of certain rights in connection with prosecutions "resulting from the defendant's failure to comply with the terms" of the agreement.[4] (Id. ¶ 9.) Among the rights waived is the right to object to the use of Defendant's plea allocution statements at trial. Since the court finds that the withdrawn plea did not terminate the cooperation agreement, the question remains whether this waiver should be enforced.

As a general rule, statements made by a defendant in connection with an aborted or withdrawn plea cannot be introduced at trial. Fed R. Evid. 410; Fed R. Crim. P. 11(f). However, a defendant may agree to waive the protection of Rule 410, and courts will enforce such agreements unless there is "some affirmative indication that the agreement was entered into unknowingly or involuntarily." United States v. Mezzanatto, 513 U.S. 196, 210 (1995). Mezzanatto involved a narrow waiver provision – one that only allowed plea negotiation statements to be used to impeach the defendant if he chose to testify at trial – but the Courts of Appeals have since allowed broader waivers. The Second Circuit upheld a waiver provision that permitted the government to introduce plea-related statements "to rebut contrary evidence or arguments presented by the defense," regardless of whether or not the defendant testifies. United States v. Velez, 354 F.3d 190, 196 (2d Cir. 2004); see also United States v. Hardwick, 544 F.3d 565 (3d Cir. 2008) (approving waiver for rebuttal purposes); United States v. Rebbe, 314 F.3d 402 (9th Cir. 2002) (same); United States v. Krilich, 159 F.3d 1020 (7th Cir. 1998) (same).

---

[3] For this reason, Defendant's request to dismiss Counts 2 through 6 on statute of limitations grounds is denied.

[4] Paragraph 9 of the agreement provides as follows: "Any prosecution resulting from the defendant's failure to comply with the terms of this agreement may be premised upon, among other things: (a) any statements made by the defendant to the Office or to other law enforcement agents on or after January 26, 2005; (b) any testimony given by him before any grand jury or other tribunal, whether before or after the date this agreement is signed by the defendant; and (c) any leads derived from such statements or testimony. Prosecutions that are not time-barred by the applicable statutes of limitation on the date this agreement is signed may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statutes of limitation between the signing of this agreement and the commencement of any such prosecutions. Furthermore, the defendant waives all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, that statements made by him on or after January 26, 2005, or any leads derived therefrom, should be suppressed." (Cooperation Agreement ¶ 9.)

Although the Second Circuit has never confronted a waiver as broad as the one here – which allows the statements to be used for any purpose, not merely for rebuttal – there is no reason to believe that rebuttal-only waivers represent the outer limit of enforceable provisions. Certainly Velez makes no such suggestion. The "rebuttal use only" limitation on the waiver at issue in Velez was imposed by the cooperation agreement itself, not by the Second Circuit. The court merely held the provision as it existed to be valid and enforceable. See Velez, 354 F.3d at 196. Furthermore, the Second Circuit has already diminished the significance of the rebuttal-only limitation on these types of waivers by broadly construing the term "rebuttal." In United States v. Barrow, 400 F.3d 109 (2d Cir. 2005), the court decided that "factual assertions made by a defendant's counsel in an opening argument or on cross-examination" can be sufficient to trigger a rebuttal waiver, allowing the prosecution to use the plea-related statements even during their case-in-chief.

Outside of the Second Circuit, other courts have examined waiver provisions containing no rebuttal limitation. Finding no "analytically coherent boundary between waivers for purposes of impeachment or rebuttal and waivers for the prosecution's case-in-chief," the Fifth Circuit upheld a limitless waiver provision like the one at issue in this case. United States v. Sylvester, 583 F.3d 285, 290-91 (5th Cir. 2009). The only other Courts of Appeals to confront such limitless waiver provisions, the Eighth Circuit and the D.C. Circuit, also held the provisions to be enforceable. See United States v. Young, 223 F.3d 905 (8th Cir. 2000); United States v. Burch, 156 F.3d 1315 (D.C. Cir. 1998). Indeed, Defendant points to no authority for limiting the reach of a knowing and voluntary waiver of rights under Rule 410. For these reasons, the court is convinced that the waiver in Defendant's cooperation agreement should be enforced according to

its terms. Accordingly, Rule 410 poses no obstacle to the Government's use of Defendant's plea allocution statements as part of its case-in-chief.

The Government proposes to present the statements to the jury in a bare-bones fashion. It would not present "the entire guilty plea, or even the fact of the plea, but rather the simple statement in the form (for example) of a stipulation that 'On June 5, 2006, the defendant stated under oath as follows,'" followed by the four-sentence allocution. (Reply 13 (emphasis added).) Defendant counters that if the Government is permitted to introduce these statements, "then all the facts and circumstances that resulted in the plea . . . would then also have to be presented to the jury." (Def. Motion 7.) The Government disagrees and seeks to preclude Defendant from "introducing extraneous and irrelevant facts and circumstances surrounding the plea." (Id. at 14.) The court declines to do so, however.

Contrary to the Government's assertion, the circumstances surrounding the statements are not irrelevant. The statements were made in the context of a guilty plea that was subsequently withdrawn. Should Defendant introduce evidence that contradicts the sworn statements he made during his allocution, the jury will have to make credibility determinations and weigh the conflicting evidence. Thus, the context in which Defendant made the statements could certainly be relevant to a jury deciding how much weight to accord the statements. Moreover, if the Government introduces Defendant's plea allocution statements, fairness dictates that Defendant be permitted to put the statements before the jury in context. Accordingly, although the court will enforce the waiver and allow the Government to introduce the plea allocution statements in its case-in-chief, it will not preclude Defendant from providing context for those statements.

8

**B. Affirmative Defenses**

At trial, Defendant intends to put forth two affirmative defenses with respect to Count One: duress and public authority.[5] The Government argues that there is no evidence to support these defenses and seeks to preclude Defendant from asserting or introducing evidence in support of either defense at trial.

1. Public Authority

In the Second Circuit, the public authority defense comes in two different forms: actual public authority and entrapment by estoppel. United States v. Giffen, 473 F.3d 30, 39 (2d Cir. 2006). An actual public authority defense applies when "a defendant has in fact been authorized by the government to engage in what would otherwise be illegal activity," id., that is, when the defendant had the government's permission for the acts charged in the indictment. By contrast, an entrapment by estoppel defense can be established even if the defendant did not receive actual authorization to engage in the charged conduct. United States v. Abcasis, 45 F.3d 39, 44 (2d Cir. 1995). Rather, only "seeming authorization" is required. Giffen, 473 F.3d at 41. This defense applies when the government, by its own actions, induced the defendant to engage in the conduct and "led him to rely reasonably on his belief that his actions would be lawful." Id. In the narcotics context, for example, the Second Circuit has explained, "If a drug enforcement agent solicits a defendant to engage in otherwise criminal conduct as a cooperating informant, or effectively communicates an assurance that the defendant is acting under authorization, and the defendant, relying thereon, commits forbidden acts in the mistaken but reasonable, good faith

---

[5] Although it appears that Defendant intends to assert public authority as a defense to all counts in the Indictment, the Government's motion seeks to preclude the defense only "in connection with his arson of a house in Staten Island on January 26-27, 2006." (Gov't Motion 1; Reply 1.) Therefore, the court need not address the public authority defense as it relates to the other counts.

9

belief that he has in fact been authorized to do so as an aid to law enforcement, then estoppel bars conviction." Abcasis, 45 F.3d at 43-44.

The Government argues that Defendant should be precluded from asserting either form of the public authority defense because both are inconsistent with Defendant's sworn statement at his plea allocution and because there is no factual basis to support either defense. The court considers each argument in turn.

With respect to the inconsistent plea allocution statement, the Government contends that because Defendant previously stated under oath that he "did not have authorization to set fire to a house or to obtain gasoline for that purpose," he cannot now establish either form of public authority defense. (Transcript of Guilty Plea 25.) The court disagrees as to both the actual public authority defense and the entrapment by estoppel defense. As the Government recognizes, the actual public authority defense "relies on the _fact_ of government authorization." (Reply 2.) As such, the appropriate inquiry focuses on the conduct and statements of the Government, not on Defendant's subjective beliefs. Defendant's statement that he did not have authority does not answer the question of whether anyone in the FBI in fact authorized his conduct. Therefore, the statement alone cannot be a basis for precluding the actual public authority defense.

On the other hand, the entrapment by estoppel defense _does_ depend on the defendant's state of mind. Defendant must have reasonably believed he was authorized to engage in the charged conduct at the time he did so. Defendant's subsequent statement that he did not have authority does not foreclose this possibility, however. For one thing, it is not clear whether the statement refers to Defendant's beliefs at the time of the conduct, or merely at the time of the plea. Even if the statement does relate to his beliefs at the time of the conduct, the court is

unwilling to preclude the defense solely on the basis of a prior inconsistent statement. As discussed above, the Government will have the opportunity to present these statements as part of their case-in-chief, and the jury can assess the weight to be accorded to the conflicting evidence.

The Government also contends that there is no factual basis for either defense. According to the Government, "there is no evidence that any government agent authorized the defendant to engage in arson or aid and abet its commission." (Gov't Motion 11-12.) Even so, Defendant claims that he will present evidence at trial that "all actions that the prosecution now contends were illegal, were performed with the express knowledge and approval of law enforcement." (Def. Motion 5.) The facts as the parties presented them offer some support to Defendant's assertion. After Defendant made his handling agents aware of the arson plan, they outfitted him with a recording device and sent him to reconnect with the crew members and find out the status of the plan. This fact, coupled with Defendant's many years of ongoing cooperation with the FBI during which he had been authorized to engage in otherwise illegal activity, suggests that Defendant's involvement in the plan might have been within the foreseeable scope of his authorization. See Abcasis, 45 F.3d at 43-44. ("[T]the defendant's conduct must remain within the general scope of the solicitation or assurance of authorization.") Similarly, a reasonable person in Defendant's position might have been led to the good faith, even if mistaken, belief that some involvement in this arson plan was authorized. Therefore, the court finds that there a sufficient basis to permit Defendant to present evidence to the jury in support of his actual public authority and entrapment by estoppel defenses. See United States v. Hurtado, 47 F.3d 577, 584 (2d Cir. 1995) ("A defense theory must be charged as long as it has some foundation in the proof, no matter how tenuous that defense may appear to the trial court.")

Accordingly, the Government's motion to preclude these defenses and related evidence is denied.

2.  Duress

In order to establish the affirmative defense of duress, a defendant must show that "(a) at the time of his conduct he was subjected to actual or threatened force, (b) the force or threat was of such a nature as to induce a well-founded fear of impending death or serious bodily harm, and (c) there was no reasonable opportunity to escape from the force or threat other than by engaging in the otherwise unlawful activity." United States v. Villegas, 899 F.2d 1324, 1344 (2d Cir. 1990). Evidence of a "mere generalized fear" or a "general apprehension of danger" is insufficient. United States v. Stevens, 986 F.2d 1175, 1182 (2d Cir. 1993). Instead, "there must have been a threat that was specific and prospects of harm that were immediate." Villegas, 899 F.2d at 1344.

When, as here, the government argues that the duress defense is legally insufficient and seeks to preclude the defendant from presenting the defense to the jury, "it is appropriate for [the] court to hold a pretrial evidentiary hearing to determine whether [the] defense fails as a matter of law." United States v. Lizalde, 38 F. App'x 657, 659-60 (2d Cir. 2002). Consequently, the court will hold a hearing on Defendant's proposed duress defense. At the hearing, the burden will be on Defendant to come forward with "some evidence on each of the [three] elements of the defense." Lizalde, 38 F. App'x at 660. If, at the close of the hearing, the court finds Defendant's evidence lacking on any element of the defense as a matter of law, the court may preclude Defendant from presenting the defense to the jury. See, e.g., United States v. Bailey, 444 U.S. 394, 416 (1980).

12

## III. CONCLUSION

For the reasons set forth above, both the Government's motion and Defendant's motion are GRANTED in part and DENIED in part. The court will hold a pre-trial evidentiary hearing to determine whether there is enough evidence to allow Defendant to present his proposed duress defense to the jury.

SO ORDERED.

Dated: Brooklyn, New York
January 29, 2010

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge